(Clark County, Ohio, Probate Court.)

J. QUINCY SMITH, Administrator, v. CHARLES H. NEFF et al.

(1). The unsupported parol evidence of one person is not sufficient to prove a deed alleged to have been lost.

(2). Evidence sufficient to establish an alleged deed must be clear and convincing – it must produce in the mind of the court a conviction that a valid deed once existed.

(3). Conviction, means a state of mind free from doubt.

ROCKEL, J.

J. Quincy Smith adm'r. of Harriet J. Neff, filed his petition in this court to sell certain described real estate to pay debts of decedent, which real estate he alleges said decedent was at the time of her death the owner of an undividual half interest therein.

The New Carlisle Building & Loan Co., by way of answer and cross-petition, denies that the said Harriet J. Neff was the owner of a one-half interest in said real estate at the time of her death and avers that prior thereto she conveyed her interest therein to her co-tenant, J. Grant Neff, by deed, properly signed, executed and delivered, but that said deed has since been lost without having been recorded; and further avers that after the conveyance to said J. Grant Neff by his mother Harriet J. Neff, the said J. Grant Neff conveyed the same by mortgage deed to the said cross-petitioner, the New Carlisle Building & Loan Co., and that the said claim of the New Carlisle Building and Loan Co. is now a valid lien on said premises, free and clear from any and all claims of the plaintiff as administrator of said Harriet J. Neff.

Harriet J. Neff was the mother of J. Grant Neff; she died January 18th, 1893, and her son J. Grant Neff died in September, 1892. The alleged deed. if executed at all, was made in May 1891. The real estate in controversy was received by devise by Harriet J. Neff and J. Grant Neff from Dr. Benjamin Neff, and was held by them in common.

No transfer appears upon the tax duplicate or of record anywhere that Harriet J. Neff ever disposed of her interest in said real estate. The records do disclose, however, that in May, 1891, the said J. Grant Neff mortgaged the entire premises to the New Carisle Building & Loan Co. The question therefore presented is, was J. Grant Neff the owner of the entire premises at the time he executed the mortgage to the New Carlisle Building & Loan Co., or was his mother still the owner of a one-half interest therein.

Charles McGuire, secretary of the New Carlisle Building & Loan Co., testifies that at the time the mortgage was given or received by him for the company, J. Grant Neff gave to him a quit claim deed which conveyed to said J. Grant Neff by his mother Harriet J. Neff the premises in controversy. That he, McGuire, examined the deed, saw that it was signed Harriet J. Neff. witnessed by two persons, and acknowledged before a notary public.

He does not remember the names of the subscribing witnesses or the notary public. Neither does he testify that he is familiar with the signature of Harriet J. Neff.

He further testifies that he gave the deed to Charles H. Noff, a brother of J. Grant Neff, to take it to Springfield and have it recorded. And that the deed was in the hand writing of B. H. Rannels, Esq.; that he looked at it carefully for the reason that as secretary of the association it was his duty to see that J. Grant Neff had title, before the money was paid over to him on the mortgage he had given to the association. Charles H. Neff does not remember much about the mater; thinks there might have been a deed left with him as Mr. Mc-Guire says, but cannot now say much about it: that it was his mother's intention, he feels pretty well satisfied, but whether there ever was such conveyance he is not now able to state.

B. H. Rannels Esq. testifies that he prepared a deed ready for signature conveying the premises in question and gave the same to J. Grant Neff for his mother to sign. No evidence of change of possession, control or other evidence of ownership is given.

These are the facts submitted to the court by the cross-petitioner, the New Carlisle Building & Loan Company. Are they sufficient to justify a court in finding that there was a conveyance of the land in controversy by Harriet J. Neff? I think not. The testimony is too frail to work conveyance of real estate which the law has always guarded with a most zealous care. If transferred by deed or passed by will, the only way in which an owner of real estate can convey the same, is by deed, duly acknowledged, and at least two witnesses must attest his signature to the instrument of writing conveying the same, for real estate cannot be conveyed by oral contract, and it must be made a matter of record. Why these precautions, if one person, with slight supporting evidence can, after the death of all the parties, give testimony sufficient to warrant a conveyance?

This case rests practically upon the evidence of Chas. McGuire. The testimony of Neff is of no particular consequence, and that of Rannel's of but little value. Leaving out of question the fact that McGuire is to a certain extent an interested witness, for I have absolute faith in his honesty, but knowing the fallibility of mankind and the frailty and fikleness of man's memory, I should be loath ever to sanction a doctrine that would transfer the title to real estate upon the unsupported, evidence of any one person. Judges and lawyers are fully aware how often it turns up during the progress

of a trial that an honest, positive capable and conscientious witness has given testimony that is impossible to be true. From some error of the senses he has formed a wrong conclusion which has led him to an honest mistake. It would be exceedingly dangerous to permit the title to real estate to rest upon such an uncertain foundation. It is true that our courts have said that no particular kind of description of testimony as to the loss, execution or contents of such instrument is absolutely requisite, but, they have also said, that the evidence in order to be sufficient must when taken as a whole produce conviction in the mind of jury that a valid deed once existed and became lost. (Blackburn v. Blackburn, 8 Ohio, 81).

But what will justify a court in reaching that conviction? Conviction means a state of mind free from doubt. Will the law be so absurd as to say that during a man's lifetime his real estate can only be transferred by a written instrument signed by himself in the presence of two witnesses, but that after his death his property may be conveyed away, his heirs defrauded and his creditors deprived of their just dues by the oral, unsupported evidence of a person whom he never knew?

If that were true title to real estate would indeed hang upon a very slender thread. It is a general rule that the testimony of a single witness relevant for proof of the issue in the judgment of the judge and credible in that of the jury, is a sufficient basis for a decision both in civil and criminal cases. (Best on evidence §596).

In discussing this rule further on the same learned, logical author says—(sec. 597): "Still however, on the trial of certain accusations, which are peculiarly liable to be made the instruments of prosecution, oppression or fraud; and in certain cases of pre-appointed evidence (where the parties about to do a deliberate act, may fairly be required to provide themselves with any reasonable number of witnesses, in order to give facility to proof of their acts) the law may with advantage relax the general rule, and exact a higher degree of assurance than could be derived from the testimony of a single witness".

Evidence sufficient to establish an alleged deed must be clear and convincing—it must produce in the minds of the court a conviction that a valid deed once existed. The present case, beyond the fact that there is but one witness to support the alleged deed, shows other reasons for its insufficiency to convince the court.

Suppose that McGuire did see a deed to which was attached the name of Harriet J. Neff as grantor, attested by the names of two subscribing witnesses; what is there to show that the signatures thereto were genuine, or that the deed ever came rightfully into the hands of the grantee. The instrument might have been forged, or if genuine, stolen from the grantor. There is no evidence of delivery of the deed other than the mere fact that it was found in the possession of the alleged grantee.

Proof of delivery and execution are both requisite to establish the deed in question. In Gilmore v. Fitzgerald, 36 Ohio St., 171, it was held that "where parol evidence is relied on to prove a deed alleged to have been lost, such evidence must clearly and satisfactorily show the execution of the proposed deed, and so much of its contents as will enable the court to determine the character of the instrument". Such satisfactory proof has certainly not been produced in the present case.

So far I have only considered the case upon the evidence of the cross-petitioner, and am satisfied that its evidence will not support its claims. But when it is further considered that a blank deed was found in the possession of Chas. H. Neff describing the premises in controversy, and in the hand writing of B. H. Rannel's the conviction is strengthened that this was the deed or supposed deed seen by Chas. McGuire.

The finding therefore will be against the cross petitioner the New Carliisle Building & Loan Co., and that the allegations of the petition are true, that Harriet J. Neff died seized of the premises in controversy.

Geo. C. Rawlins & H. C. Stafford, for plaintiff.

B. H. Rannells, for cross-petition.